IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Garcia Zenas Martelli Wilson a/k/a Garcia Zenas Wilson,<br><br>      Plaintiff,<br><br>v.<br><br>Scotty Bodiford, *Jail Administrator*; James Dorreity, *ASS. Administrator*; Tracy Krein, *Medical Administrator*; Nurse Johnson, *Medical Staff*; Officer Marshall, *Greenville County Guard*; and Officer Gant, *Greenville County Guard*,<br><br>      Defendants. | Civil Action No.2:13-cv-00199-RMG-BHH<br><br>**REPORT AND RECOMMENDATION<br>AND ORDER OF<br>MAGISTRATE JUDGE** |

  The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983.[1] This matter is before the Court upon a the following motions: (a) Plaintiff's Motion for Preliminary Injunction (Dkt. No. 38); (b) Defendants' Motion for Summary Judgment (Dkt. No. 39); and (c) Plaintiff's Motion to Amend (Dkt. No. 48).

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

  The Plaintiff brought this action on or about January 12, 2013. (See Dkt. No. 1.)[2] On or about February 20, 2013, the Plaintiff filed a Motion for Preliminary Injunction. (See Dkt. No. 10.) That motion was denied on April 19, 2013. (Dkt. No. 24.) On or about July 25,

---

[1] At the time Plaintiff filed his Complaint, he was a pretrial detainee at the Greenville County Detention Facility. (See Dkt. No. 1.)

[2] On or about December 26, 2012, Plaintiff filed a Petition for Writ of Mandamus. See Wilson v. Verdin et al., Civ. A. No. 2:13-cv-00010-RMG-BHH. In an Order dated March 26, 2013, the undersigned consolidated that action with the action in the case *sub judice*. (Dkt. No. 11 in Civ. A. 2:13-cv-00010-RMG-BHH.)

2013, Plaintiff filed a second Motion for Preliminary Injunction (Dkt. No. 38.) Shortly thereafter, on August 23, 2013, Defendants filed a Motion for Summary Judgment (Dkt. No. 39.) By order filed August 26, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 41.) Plaintiff filed his Response in Opposition to the Motion for Summary Judgment on or about September 30, 2013. (Dkt. No. 43.) On or about November 21, 2013, Plaintiff filed a Motion to Amend his Complaint. (Dkt. No. 48.) Defendants have filed Responses to Plaintiff's Motion to Amend and to Plaintiff's Motion for Preliminary Injunction. (See Dkt. No. 40; Dkt. No. 50.)

## PROCEDURAL FACTS

Plaintiff, who is currently housed at Kirkland Reception and Evaluation Center, alleges claims pursuant to 42 U.S.C. § 1983, for events that occurred while he was a pretrial detainee at the Greenville County Detention Center ("Detention Center"). Plaintiff alleges that "on or around 2011" while he was in lock-up at the Detention Center, Nurse Johnson "gave [him] the wrong meds." (Dkt. No. 1 at 3 of 5.) Plaintiff states that he took the medication, but it looked different, so he asked Nurse Johnson what medication he received. (Id.) According to Plaintiff, Nurse Johnson said, "Oh I gave you [another detainee's] meds," and told Plaintiff "to just lay down" and Plaintiff would be fine. (Id.) Plaintiff alleges that his "head began to hurt real bad," so he "told every medical staff that came to bring meds out but no one" did anything. (Id.) Plaintiff further alleges that he "wrote grievances" to Defendant Krein, the "administrator over medical," and Defendant Dorriety, the Detention Center's assistant administrator, but "nothing was done." (Id.)

According to Plaintiff, Nurse Johnson gave Plaintiff incorrect medication again in June of 2012, constituting the third instance of him receiving the incorrect mediation. (Id.; see also Dkt. No. 1-2 at 2 of 10.) Plaintiff states,

2

> Upon taking the medication, I saw one pill that looked very different from meds that I usually take so I asked Nurse Johnson what all I was taking tonight. She then looked at the empty packages and said "Oh I've give[n] you Michael Wilson's medication." So I then stated "You're trying to kill me." She then said "No you'll be ok just lay down if you get dizzy I'm sorry."

(Dkt. No. 1 at 3-4 of 5.) Plaintiff alleges that he "went straight to the officers['] desk where Officer Marshall and Sgt. Gant" were and told them what happened, but "they only looked at each other when [Plaintiff] asked what [he] should . . . do." (Id. at 4.) Plaintiff alleges that again he wrote grievances to Defendant Krein and Defendant Dorriety, and again nothing was done. (Id.) Plaintiff does state, however, that "a month later" Defendant Dorriety "called [Plaintiff] to professional visit to allow [Plaintiff] to know this was Administrative Nurse T. Krien's fault for not taking action." (Dkt. No. 1-2 at 2-3 of 10.) According to Plaintiff, Defendant Dorriety "stated that because this was very wrong he'd ensure" Plaintiff got a "house arrest bond," but Dorriety "never did anything to help" Plaintiff. (Id. at 3 of 10.) Plaintiff continues (verbatim),

> Also I've wrote medical 360 request to get my headaches checked out but no one has seen me for this yet. All of my constitutional amendments have been broken as my due process for being sick with constant headaches. It's hard to concentrate on my legal case.

(Dkt. No. 1 at 4 of 5.)[3]

In the "Relief" section of his Complaint, Plaintiff states that he wants to be sent "to an outside doctor to be treated" and seeks $1.5 million in damages as well as "release from the custody of Greenville County Detention." (Id. at 5 of 5.) Plaintiff also asks that Nurse Johnson "be fired." (Dkt. No. 1-2 at 4 of 10.)

---

[3] The "360" appears to refer to a medical request form. (See Krein Aff. ¶ 6.)

3

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, several motions are pending in the instant matter. The undersigned will address the motions in turn.

**A.     Motion for Summary Judgment (Dkt. No. 39)**

Defendants seek summary judgment on Plaintiff's claims; they contend that Plaintiff "has failed to present evidence establishing that any of the Defendants deprived him of a right or privilege secured to him by the United States Constitution or federal law." (Dkt. No. 39-1 at 1 of 17.) The undersigned will address the claims against each defendant.

Plaintiff's claim against Defendant Johnson is that she gave him another detainee's medication in 2011 and in June of 2012. (See generally Dkt. No. 1.) In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed

4

by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted).[4] To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Defendant Johnson is entitled to summary judgment. The negligent administration of the wrong medicine does not rise to the level of an Eighth Amendment violation or constitute deliberate indifference. See Barnett v. Luttrell, 414 Fed. App'x 784, 788 (6th Cir. 2011) (the plaintiff's claim that a nurse gave him the incorrect medication "constituted medical malpractice at most and cannot constitute an Eighth-Amendment violation."); see also Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Brown v. Briscoe, 998 F.2d 201, 204 (4th Cir.1993) (upholding sua sponte dismissal of § 1983 claim where nurse administered a

---

[4] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle, 429 U.S. 97); see also Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992).

tuberculosis inoculation after inmate informed her he had already received one); Chestnut v. S.C. Dep't of Corrs., Civ. A. No. 3:10-200-TLW-JRM, 2010 WL 1052213, at *3 (D.S.C. Feb. 12, 2010) adopted at 2010 WL 1052207 (D.S.C. Mar. 19, 2010) ("The present complaint provides no facts to indicate that Defendant Crill had knowledge that she was giving Plaintiff the wrong medication, or that she disregarded any known risk to Plaintiff's health or safety. Instead, Plaintiff allegations are based on this Defendant's erroneous and inadvertent actions, which do not rise to the level of deliberate indifference."). As such, the undersigned recommends granting summary judgment to Defendant Johnson.

As Defendants note in their Memorandum in Support of their Motion for Summary Judgment, Plaintiff claims "that one or all of the Defendants (he does not specify) refused to treat him for headaches." (Dkt. No. 39-1 at 11 of 17.) As a preliminary matter, the fact that Plaintiff has not identified which individual or individuals refused to treat him is fatal to such a claim. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (in a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations."); see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Defendants argue that they are entitled to summary judgment on the merits of this claim because Plaintiff's medical records "show[] GCDC medical personnel provided the Plaintiff with continuous care and evaluation of his headache and sinus-related complaints." (Dkt. No. 39-1 at 12 of 17.) Defendants further state,

> From July of 2012 through December, 2012, the Plaintiff was seen by the medical staff at least eight times to address complaints about the Plaintiff's sinuses and headaches, and the medical staff responded by changing his medication, ordering a nebulizer breathing treatment, ordering hot compresses for his head and face, and considering the purchase and use of a Nettie pot.

6

(Id.) Defendant Krein states in her Affidavit,

> In his Complaint the Plaintiff . . . claims that the medical staff at GCDC ignored or otherwise refused to treat headaches that he claims he began to experience after taking the wrong medicine. His medical records, however, show that GCDC medical staff regularly treated the Plaintiff's headache issues, which did not arise until later in 2012 and which the medical staff attributed to his chronic sinus problems–problems that Plaintiff had dealt with for many years prior to his incarceration at GCDC.

(Krein Aff. ¶ 10.) Plaintiff has presented no evidence to the contrary. (See, e.g., Dkt. No. 39-3 at 25 of 47.) The undersigned therefore recommends granting summary judgment as to this claim.

The undersigned also recommends granting summary judgment to Defendants Marshall and Gant. The sum of Plaintiff's allegations against these two Defendants is that after Defendant Johnson gave Plaintiff the wrong medication in June of 2012, he "went straight to the officers['] desk where Officer Marshall and Sgt. Gant" were and told them what happened, but "they only looked at each other when [Plaintiff] asked what [he] should . . . do." (Dkt. No. 1-2 at 4 of 10.) As a preliminary matter, any allegations that these Defendants failed to assist Plaintiff under these circumstances would–at best–constitute negligence, and negligence is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct. . . . "). Furthermore, as Defendants contend in their Memorandum in Support of their Motion for Summary Judgment, Plaintiff was able to submit his concerns to the medical clinic in his June 15, 2012 grievance; the response to that grievance was that the nurse checked Plaintiff's allergies, and the "other person was not taking anything [Plaintiff] ha[s] stated [he is] allergic to." (Dkt. No. 39-3 at 12 of 47.)

7

Plaintiff cannot establish that either Gant or Marshall violated Plaintiff's federal rights; these two Defendants are thus entitled to summary judgment.

Defendants Dorriety and Krien are likewise entitled to summary judgment. One of Plaintiff's complaints against Dorriety and Krien is that he wrote grievances to them about the alleged incorrect medication, and "nothing was done." (Dkt. No. 1 at 3-4 of 5.) Plaintiff does not allege that either of these two individuals gave Plaintiff the incorrect medication; his allegation–at least on these facts–that "nothing was done" does not amount to a constitutional violation. Generally speaking, the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). However, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (citations omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." Id. at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an

independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Id. (citations omitted).

In the instant case, Plaintiff complains that neither Dorriety nor Krein responded to the claim that he received incorrect medication in 2011. However, as noted above, an isolated incident does not give rise to supervisory liability. See Slakan, 737 F.2d at 373. While Plaintiff also complains that neither Dorriety nor Krein responded to his receipt of incorrect medication again in 2012, the evidence submitted by Krein reveals that an investigation was, in fact, done. (See Krein Aff. ¶ 8.) Krein states in her Affidavit:

> The investigation prompted by the Plaintiff's June 15, 2012 grievance–an investigation that occurred at the staff level–also revealed that there was no record of a medication error. In addition, there was a question of whether the Plaintiff ever, in fact, ingested the wrong medication. Unable to confirm that the Plaintiff had received the wrong medication or that he had ingested the wrong medication, the GCDC medical staff reviewed the Plaintiff's stated drug allergies and compared them to the medications he claimed to have received in error. After confirming that Plaintiff had no drug allergies to the medicines he claimed to have received in error, GCDC medical staff provided the Plaintiff with this information in response to his grievance.

(Id.; see also Dkt. No. 39-3 at 12 of 47.)

For all the reasons discussed as to Defendant Johnson, Plaintiff cannot establish deliberate indifference to his serious medical needs as a result of twice receiving the incorrect medication. Furthermore, the evidence revels that neither Krein nor Dorriety were deliberately indifferent to Plaintiff's serious medical needs. Neither were personally involved in dispensing the medication, and the Plaintiff cannot meet the heavy burden of proof for supervisory liability. Defendants Dorriety and Krein are therefore entitled to summary judgment.[5]

---

[5] Plaintiff also complains that Dorriety told Plaintiff that Dorriety would "ensure" Plaintiff got a "house arrest bond," but Dorriety "never did anything to help" Plaintiff. (Dkt. No. 1-2 at 3 of 10.) Of course, Dorriety does not have authority over bond matters. See, e.g. S.C. Code Ann. § 17-15-10 et seq.; see also Dorriety Aff. ¶ 7.) Dorriety is entitled to summary judgment on this complaint.

Finally, the undersigned recommends granting summary judgment to Defendant Bodiford. Plaintiff has not made any allegations against Bodiford, other than Bodiford is the administrator of the Detention Center. (See Dkt. No. 1 at 2 of 5.) Such an allegation is insufficient to give rise to liability under § 1983. See Slakan, 737 F.2d 368; see also Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."). The undersigned therefore recommends granting summary judgment to Bodiford.

**B.     Motion for Preliminary Injunction (Dkt. No. 38)**

On or about July 25, 2013, Plaintiff filed a second Motion for Preliminary Injunction (Dkt. No. 38.) Therein, Plaintiff complains that he is "[b]eing held in . . . unsafe and extremely harsh conditions in an overcrowded jail"; he also asserts that there has been a "pattern of guard brutality or harassment" since he filed the instant lawsuit. (Id.)

The undersigned recommends that Plaintiff's second Motion for a Preliminary Injunction (Dkt. No. 38.) be denied. To obtain a temporary restraining order ("TRO") or preliminary injunction, a plaintiff must show:

(1) that he is likely to succeed on the merits,

(2) that he is likely to suffer irreparable harm in the absence of preliminary relief,

(3) that the balance of equities tips in his favor, and

(4) that an injunction is in the public interest.

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The instant lawsuit is, in essence, a complaint about receiving incorrect medication on two occasions and the subsequent alleged lack of inaction on the part of various individuals. And for the reasons discussed above, the claims fail on the merits; he therefore cannot show that he is likely to succeed on the merits. Because Plaintiff has not shown all four Winter factors, the

undersigned recommends denying Plaintiff's Motion for Preliminary Injunction. See Winter, 555 U.S. at 20; see also Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991) (noting that the plaintiff "bears the burden of establishing that each of these factors supports granting the injunction" (quoting Technical Publishing Co. v. Lebhar-Friedman, Inc., 729 F.2d 1136, 1139 (7th Cir. 1984))); Z-Man Fishing Prods., Inc. v. Renosky, 790 F. Supp. 2d 418, 434 (D.S.C. 2011) (denying TRO for failure to meet all four elements as outlined in Winter).

**C.     Motion to Amend (Dkt. No. 48)**

On or about November 21, 2013, Plaintiff filed a document entitled "Supplemental Complaint," which the Clerk of Court properly docketed as a Motion to Amend. (See Dkt. No. 48.) Plaintiff seeks to add three defendants to the instant action: Sergeant Wright, Captain Holister, and Officer Holland, employees of the Detention Center. (See Dkt. No. 48 at 1 of 5.) Plaintiff complains that he has been "[d]epriv[ed] of the rights and privileges to be treated by [a] medical doctor for constant headaches." (Dkt. No. 48 at 2 of 5.) According to Plaintiff, he has been placed on the sick call list "only to be delayed for over a month," when "there are other inmates with [fewer] medical problems being seen immediate[ly]." (Id.) Plaintiff alleges that during the "whole month of September 2013," he was on the sick call list "for ongoing headaches and vomiting on and off." (Id.) It appears Plaintiff contends his medication was making him nauseated. (Id.) Plaintiff also alleges that during a shakedown of his cell, officers found medication, so he "was placed in the S.H.U. unit with no hearing the whole 28 days" he was in that unit. (Id.) Plaintiff states that on October 17, 2013, Captain Holister told Plaintiff "to accept responsibility for [Plaintiff's] part in this." (Id.) Plaintiff asserts that when he "was finally seen by medical," Nurse Raye gave him an antacid "that did no good for [Plaintiff's] problem," so he wrote a request "to get another

11

exam by a true doctor but was denied and taken off the sick call list." (Id.) Plaintiff continues,

> On 10-19-13 at 1245 to 4AM I was handcuffed and shackled to the A-side wall in the S.H.U. unit per officer Courtney Wright to seem as punishment I was first pulled out of my cell to receive a breathing treatment by medical but the machine wasn't working properly so I was told by medical that Nurse McKinney would be back after finding another machine to complete my treatment. Staff Officer Holland in the S.H.U. at this time never called medical after the first hour of waiting to see if and when Nurse McKinney was coming back. Officer Holland only spoke to Sergeant Wright who Officer Holland told me had told him to leave me handcuffed to the wall. This caused deliberate indifference when prison officials have prevented an inmate from receiving recommended treatment or when inmate is denied access to medical personnel capable of evaluating the need for treatment.

(Id. at 3 of 5.)

On or about November 26, 2013, Plaintiff filed a supplement to his Motion to Amend. (See Dkt. No. 49.) The attachments are various Greenville County Detention Center Inmate Request Forms. (See generally Dkt. No. 49-1.) Only one appears related to the proposed additional defendants; in this Inmate Request form, dated October 15, 2013, and directed to Captain Hollister, Plaintiff asks Hollister to "come see [Plaintiff] in the SHU." (Dkt. No. 49-1 at 1 of 10.) Plaintiff states that he wrote Hollister and "Nurse Krein a month ago about [his] situation and I've seen the Nurse Ray after being on sick call for 8 weeks, but yet I'm still throwing up my food." (Id.) The "action taken" section of the request states,

> I will come see you when I have a moment to discuss your concerns. While there are multiple issues at hand; you must accept responsibility for your part in them. That is what causes you to go to the SHU. I will return you to GP in a few days.

(Id.)

Rule 15(a) of the Federal Rules of Civil Procedure provides, in relevant part,

> **(1) *Amending as a Matter of Course*.** A party may amend its pleading once as a matter of course within:
>
> **(A)** 21 days after serving it, or

12

> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> **(2) *Other Amendments*.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). As the Fourth Circuit stated in Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986), "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."

When a party seeks to amend his or her pleadings after the deadlines in the scheduling order have passed, the "moving party must first satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant must then pass the tests for amendment under Rule 15(a)." Odyssey Travel Ctr., Inc. v. RO Cruises, Inc., 262 F.Supp.2d 618, 631 (D. Md. 2003); see also Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."). In an unpublished opinion, the Fourth Circuit stated, "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel County, Md., 182 Fed. App'x 156, 162 (4th Cir. 2006) (citing Odyssey Travel, 262 F.Supp. at 631-32).

In the instant case, the deadline for dispositive motions was August 26, 2013. (Dkt. No. 36.) Plaintiff filed the Motion to Amend well after this deadline and in fact, well after the Motion for Summary Judgment had been fully briefed. (See Dkt. No. 39; Dkt. No. 43.) Plaintiff has not explained why he filed the Motion to Amend at such a late stage in the

proceeding. Furthermore, the proposed amendment is futile. Plaintiff seeks to add three individuals as defendants: Sergeant Wright, Captain Holister, and Officer Holland. Plaintiff's complaint against Holister is that, in responding to an Inmate Request Form, Holister wrote that Plaintiff "must accept responsibility for [Plaintiff's] part" in the issues of which Plaintiff was complaining. (Dkt. No. 49-1 at 1 of 10.) Such an action simply does not rise to the level of violation of Plaintiff's federal rights. Plaintiff appears to complain that Wright and Holland interfered with his receipt of a breathing treatment. (See Dkt. No. 48 at 3 of 5.) However, Plaintiff's own allegations reveal that they did not interfere with Plaintiff's treatment; instead, the machine the nurse had did not function properly, and the nurse failed to return with a working machine. (Id.) Much like the allegations about receiving the incorrect medication, Plaintiff's allegations against Wright and Holland are–at best–allegations of negligence. Such an amendment would be futile, as negligence is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995). Plaintiff's Motion to Amend (Dkt. No. 48) is therefore DENIED.

## **CONCLUSION**

Wherefore, it is ORDERED that Plaintiff's Motion to Amend (Dkt. No. 48) is DENIED.

AND IT IS SO ORDERED.

Wherefore, it is RECOMMENDED that Plaintiff's Motion for Preliminary Injunction (Dkt. No. 38) be DENIED, and Defendants' Motion for Summary Judgment (Dkt. No. 39) be GRANTED.

IT IS SO RECOMMENDED.

January 7, 2014  
Charleston, South Carolina

s/Bruce Howe Hendricks  
United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).